```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
           CHARLOTTE DIVISION
              3:10CV326-MU-02
```

```
DAVID T. DUNCAN,              )
     Petitioner,              )
                              )
          v.                  )          ORDER
                              )
ALVIN W. KELLER, JR. Supt.,   )
     Respondent.              )
_____)
```

**THIS MATTER** comes before the Court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1). No response is necessary from the North Carolina Attorney General.

Rule 4 of the Rules Governing Section 2254 Cases, directs habeas courts promptly to examine habeas petitions. When it plainly appears from any such petition and any attached exhibits that the petitioner is not entitled to relief, the reviewing court must dismiss the motion. For the reasons stated herein, Petitioner's case will be dismissed as time-barred.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

According to the form-Petition, Petitioner pled guilty to second-degree murder and robbery with a dangerous weapon in the Superior Court of Union County. On March 28, 1996, that Court reportedly sentenced Petitioner to a term of 243 to 301 months imprisonment for the murder conviction and to 101 to 131 months imprisonment for the robbery conviction.

Further, although Petitioner responded "yes" to the question on his form-Petition which asked whether he had directly appealed his convictions, he failed to include any information concerning a direct appeal before the North Carolina Court of Appeals. Rather, in the space provided for Petitioner to list the information concerning his direct appeal, he provided information concerning a 2002 Motion for Appropriate Relief ("MAR," hereafter) which he reportedly filed in the Superior Court of Union County. That MAR was denied and Petitioner's appeal of that decision subsequently was denied by the State Court of Appeals.

In addition, the Petition reports that Petitioner returned to the Superior Court of Union Count in July 2009 with a document described as an "Avernment [sic] of Jurisdiction," seeking to challenge "the jurisdiction of the State of North Carolina, its Courts and affliates [sic] for violating the U.S. Constitution for the Criminal Act of Denationalization of [Petitioner]." Not surprisingly, that pleading was rejected. Last, Petitioner sought review for the denial of his Avernment [sic] of Jurisdiction in the State Court of Appeals and the State Supreme Court. However, both Courts denied his petitions, the final decision having been entered by the State Supreme Court on June 23, 2010.

Petitioner now has come to this Court on the instant Petition under 28 U.S.C. § 2255. Although his claims are barely

2

intelligible, it appears that Petitioner is arguing that his status as a "Moorish American National," not a Black person must be corrected; that his 13th, 14th and 15th Amendment rights were violated by virtue of the State's exercise of jurisdiction over him and reference to him as a Black person on his birth certificate, arrest records and all other official records; that the State's reference to him as a Black person violates the Constitution's Ex Post Facto Clause because he is "not a slave nor a State property. [He is] in [his] proper person 5/5 of a Freeborn Moorish American National!!! A Sovereign!!!"; and that the State has "denationaliz[ed]" him by labeling him as Black on his birth certificate when his nationality is "Moorish-American," all in violation of his constitutional rights. (Doc. No. 1 at 5-10). Nevertheless, the Court has determined that in addition to the fact that such claims are subject to dismissal for their failure to state a cognizable claim for relief, the instant Habeas Petition must be summarily dismissed as time-barred

## II. **ANALYSIS**

Indeed, in April 1996, the U.S. Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA, hereafter), effectively amending 28 U.S.C. §2254 by adding the following language:

A 1-year period of limitation shall apply to an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review:
>
> (B) the date on which the impediment to filing an application created by State in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court; if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Furthermore, the AEDPA provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, Petitioner reports that he was sentenced on March 28, 1996. Though he claims to have filed a direct appeal, Petitioner fails to provide any of the requested information about that proceeding. (Doc. No. 1 at 2). Moreover, the Court has taken judicial notice that, according to the docket sheets maintained by

both the State Court of Appeals and the Superior Court of Union County, Petitioner did <u>not</u> file any such appeal. <u>Colonial Penn. Ins. Co. v. Coil</u>, 887 F.2d 1236, 1239 (4th Cir. 1989) (<u>citing</u> <u>St. Louis Baptis Temple, Inc. v. FDIC</u>, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue). Therefore, in the absence of a direct appeal, Petitioner's convictions and sentences became final ten business days later, on April 11, 1996. N.C.R.App. P. 4(a) (then providing 10 days for service of notice of appeal for convictions entered in 1996). Furthermore, because Petitioner's case became final prior to the 1996 enactment of the AEDPA, he had up to and including April 24, 1997, in which to file the instant <u>habeas</u> Petition. <u>Id</u>. at 328 (noting that for pre-AEDPA convictions, 1-year limitations period runs from AEDPA's effective date); <u>and</u> <u>Brown v. Angelone</u>, 150 F.3 370, 375 (4th Cir. 1998) (same). Obviously, Petitioner did <u>not</u> file this Petition by such April 1997 date.

Additionally, while it has not escaped the Court's attention that Petitioner sought post-conviction review by two MARs which he filed in the Superior Court of Union County, that fact is of little consequence here. To be sure, the Court takes judicial notice that

5

the docket sheets maintained by the Superior Court of Union County reflect that Petitioner did not initiate his pursuit of collateral review until February 21, 2002, when he filed his first MAR in that Court. Because it is well settled that subsequently filed motions or petitions for collateral review in State court cannot somehow breathe new life into already expired federal limitations periods, Petitioner's delayed pursuit of State collateral review simply came too little too late. See Minter v. Beck, 230 F.3d 663 (4th Cir. 2000) (time period after case became final for purposes of direct appellate review but before initiation of State collateral review is not tolled from one-year limitations period). In short, the time during which Petitioner pursued collateral review cannot be used to toll the one-year limitations period.

Furthermore, question 18[1] on Petitioner's form-Petition prompts petitioners whose judgments of conviction became final more

---

[1] In January 2002, the Fourth Circuit Court of Appeals decided the case of Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002). There, the Court concluded that "when a federal habeas court, prior to trial, perceives a pro-se [petition or motion to vacate] to be untimely and the state has not filed a motion to dismiss based upon the one-year limitations period, the [district] court must warn the petitioner that the case is subject to dismissal . . . absent a sufficient explanation." Consistent with that requirement, in December 2004, the Administrative Office of the Courts modified the federal habeas forms to comply with Hill. The new forms now include a section which directs the petitioner to address the "timeliness of [his/her] motion." In particular, question 18 on the new form advises the petitioner that if his/her conviction became final more than one year before the time that the motion to vacate is being submitted, he/she "must explain why the one-year statute of limitations as contained in 28 U.S.C. §2244(d) [also set forth on the form] does not bar [such] motion." Accordingly, given the fact that Petitioner has addressed the timeliness of his Petition -- albeit, unsuccessfully, this Court concludes that no further warning is required for him.

6

than a year before the initiation of their habeas Petitions to "explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar [their] Petition[s]." To that end, Petitioner advises the Court that his Petition should be deemed timely filed because:

> I, David T. Duncan-Bey, Petitioner, in propria persona, sui juris, is in custody in a direct violation of the constitution or laws or treaties of the United States. Once the Petitioner became fully aware that my constitutional rights were/is being violated by the State of North Carolina as a Moorish American National. It was/is my right to charge those in violation with the federal crim of denationalization. I, David T. Duncan-Bey must abide by the law; same goes for the N.C. Government. A crime is a crime. Surely, if I was fully aware of these U.S. constitutional laws of nationality, I would have argued them in March 28,1996!!! Yet, the law of the U.S. Constitution still stands firmly today as it did yesterday. I, David T. Duncan-Bey, in propria persona sui juris pray the federal courts DO NOT BAR my Petition for Writ of Habeas Corpus. . . 'Time never was when man was not!'

Notwithstanding his apparent belief to the contrary, however, Petitioner's explanation falls far short of establishing the timeliness of his Petition under the AEDPA. Indeed, this explanation does not assert that Petitioner's delay was occasioned by the existence of a State created impediment, or that the claims are grounded in some newly recognized law of the Supreme Court. Furthermore, Petitioner attempts to argue that his claims are

7

brought pursuant to a factual predicate ("these U.S. constitutional laws of nationality") of which he was not aware at the time of his conviction in 1996. Notably, however, he does not even bother to explain when he discovered the predicate for his claims. Equally critically, the laws regarding citizenship predated Petitioner's 1995 prosecution by decades. As such, there was no reason why he could not have formulated his claims before the expiration of his limitations period. To put it simply, all of the information which Petitioner would have needed in order to fashion his claims was readily available to him prior to the expiration of his limitations period. Therefore, he cannot establish a statutory reason for construing his Petition as timely filed.

Likewise, the Court is aware that once in a great while a petitioner can have his filing delay excused under the principles of equitable tolling. See, e.g., Parmaei v. Jackson, 2010 WL 201775 (4th Cir. May 21, 2010) (unpub.) (equitable tolling appropriate for petitioner who untimely re-filed a § 2254 petition which, though originally submitted before one-year deadline, petition was erroneously refused by a deputy clerk of court, and was subsequently mistakenly dismissed by court on exhaustion grounds). However, as the Fourth Circuit explained in Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000), "any invocation of equity to relieve the strict application of a statute of limitations must

8

be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.". Id. at 330. Accordingly, in order to warrant equitable tolling, a petitioner must establish that he was prevented from asserting claims by wrongful conduct of the government, or that extraordinary circumstances beyond his control made it impossible to file claims in a timely manner. Id.; United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000) (discussing requirements). Inasmuch as Petitioner's assertion of the recent discovery of the long-standing principles governing his American citizenship does not come close to invoking equitable tolling, the time in which he delayed bringing this Petition simply cannot be tolled.

The Court also is aware of the Fourth Circuit's decision in Bilal v. North Carolina, 287 Fed. App'x 241 (4th Cir. July 18 2008), in which the Court -- specifically limiting its holding to the facts of that case –- concluded that this Court's sua sponte dismissal of a § 2254 Petition was premature. However, this case is factually distinguishable from Bilal.

In Bilal, the petitioner responded to question 18 on his form petition with an ambiguous "N/A" response, thereby possibly reflecting his confusion as to either the question or his status. Here, Petitioner attempted to provide an excuse for his delay. Moreover, unlike Bilal, this case does not involve a mere 30-day

9

delay, rather it involves a delay of more than 13 years from the time that Petitioner's convictions and sentences are construed as having become final (April 1996) and the date on which he filed[2] the instant Petition (July 19, 2010). As such, this Court finds Bilal inapplicable here. In sum, therefore, the undersigned finds that Petitioner's untimeliness stands as an absolute bar to his entitlement to federal review.

Finally, the Court notes that even if Petitioner's claim could be construed as timely filed, they would not entitle him to any relief under § 2255 as they do not raise any credible claims that he was convicted or sentenced in violation of his constitutional rights. Therefore, this Petition must be dismissed. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("[A] habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle petitioner to evidentiary hearing."), abrogation other grounds recognized, Yeatts v. Angelone, 166 F. 3d 255 (4th Cir. 1999).

### III. **CONCLUSION**

The Court has determined that the instant Petition was un-timely filed without excuse; and lacks merit. Therefore, the

---

[2] Pursuant to the so-called "mail box rule" announced in Houston v. Lack, 487 U.S. 266 (1988), this Petition is construed as having been filed on July 19, 2010, the date on which Petitioner's certification reports that he placed the document in his prison's mailing system, rather than July 20, 2010 -- the date on which it was received and file-stamped by the Court.

Petition must be <u>dismissed</u>.

## IV.  <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Petitioner's Petition for a Writ of <u>Habeas Corpus</u> (document # 1) is **DENIED and DISMISSED** as untimely filed; and

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

**SO ORDERED.**

Signed: July 23, 2010

Graham C. Mullen
United States District Judge